# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VITALITY ORGANICS LLC; RJR WELLNESS LLC; NATURAL HEALING AND WELLNESS OF CRANBERRY LLC, | : : : : | CIVIL CASE NO. _____ |
| PLAINTIFFS, | : : | |
| v. | : : | COMPLAINT |
| LANCASTER COUNTY, PENNSYLVANIA; HEATHER L. ADAMS, IN HER OFFICIAL CAPACITY AS LANCASTER COUNTY DISTRICT ATTORNEY AND IN HER PERSONAL CAPACITY; JEFFREY R. KRAUSE, IN HIS OFFICIAL CAPACITY AS A LAW ENFORCEMENT OFFICER FOR LANCASTER COUNTY AND IN HIS PERSONAL CAPACITY; JOHN DOES 1-3, IN THEIR OFFICIAL CAPACITIES AS LAW ENFORCEMENT OFFICERS WITH LANCASTER COUNTY AND IN THEIR PERSONAL CAPACITIES, | : : : : : : : : : : : : | |
| DEFENDANTS. | : : | |

## PLAINITFFS' ORIGINAL COMPLAINT

Plaintiffs, Vitality Organics LLC ("Vitality"), RJR Wellness LLC ("RJR"), and Natural Healing and Wellness of Cranberry LLC ("Natural"), complains as follows:

### Preliminary Statement

1. This is a civil action for damages and declaratory relief arising under the 4th and 1st amendments to the constitution of the United states. This suit concerns the warrantless search and seizure of certain hemp derived products carried by plaintiffs, which products are and have been legally sold for years in Lancaster County and all over Pennsylvania by Plaintiffs and many others, pursuant to Pennsylvania law and the policies of the Pennsylvania Department of Agriculture.

2.      The products at issue in this case - derived from hemp and containing various tetrahydrocannabinol isomers known in abbreviated form as "Delta-8," "Delta-10," and so forth - have been openly and legally sold in Pennsylvania for years, following certain amendments to Pennsylvania and federal law described further below.

3.      Despite this, Lancaster County District Attorney Adams directed warrantless raids of Vitality and dozens of other businesses in Lancaster County in or around April 2023 to seize such products, claiming they are schedule one controlled substances under Pennsylvania law. District Attorney Adams' position flies in the face of the Pennsylvania statutes and the Pennsylvania Department of Agriculture's policies and public statements on the matter, as described below. The products at issue are legal to possess and sell in Pennsylvania, and Defendants therefore lack any basis for the seizure of such products.

4.      Further, even if the products at issue were still controlled substances, the defendant the defendants warrantless search and seizure as undertaken here violated Vitality's rights under the 4th amendment, and all Plaintiffs rights under the 1st amendment.

5.      Vitality has not only suffered the loss of inventory from the seizure, which is now likely destroyed, but it has suffered and will continue to suffer lost profits and damage to business good will unless and until this court provides relief that protects vitality organics from such illegal enforcement by Lancaster County.

6.      Additionally, all plaintiffs have suffered a chilling effect on their speech for advertisement and sale of hemp-based products by the warrantless search and seizure as undertaken by the Defendants against a number of companies in Lancaster County. Such chilling effect has caused Plaintiffs to suffer and continue to suffer lost profits and damage to business

goodwill unless and until this court provides relief to protect Plaintiffs from such illegal enforcement by Lancaster County.

## Jurisdiction and Venue

7.      This civil action arises under the First, Fourth, and Fourteenth amendments of the United States Constitution under 42 U.S.C. § 1983. As such, this court has federal question jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343. Plaintiff also seeks a declaration of rights pursuant to the declaratory judgments act, 28 U.S.C. §§ 2201-02.

8.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants are located in this district and the Defendants' official duties are performed in this district. Additionally, a substantial part of the events giving rise to the claims occurred in this district.

## Parties

9.      Plaintiff Vitality is a business entity registered under the laws of Pennsylvania. Vitality was established on October 18, 2018 in Enola, PA. Vitality owns and operates American Shaman hemp-based products franchise stores in Pennsylvania, including in Carlisle, Mechanicsburg, Harrisburg, Camp Hill, and Lancaster. By way of background, the founder of American Shaman identified that hemp-based products provide wellness and relief for people coping with various maladies. As such, he began to develop tinctures and like products, creating the first American Shaman store – now one of the fastest growing franchises with over three hundred (300) retail stores across the United States.

10.     Plaintiff RJR is a business entity registered under the laws of Pennsylvania. RJR was established on May 1, 2019 in York, PA. RJR also owns and operates American Shaman franchise stores in Pennsylvania.

11.     American Shaman is one of the only companies making a water-soluble product, and American Shaman produces all products "in-house", including the hemp itself, so quality assurance and legal compliance is guaranteed.

12.     In fact, one of the American Shaman store owners for RJR is a seasoned trial attorney, passing the bar in 2005.  The other owner recently retired after approximately thirty (30) years as a Pennsylvania Municipal Judge.

13.     RJR opened their first store in York in August of 2019, joined the Chamber of Commerce, and had a ribbon cutting ceremony that made front page news in the paper.  Due to the immediate success, RJR opened a second location in Camp Hill, PA less than six (6) months later.  Roughly six (6) months after that, RJR opened American Shaman stores in Gettysburg, PA and Rehoboth Beach, DE.

14.     Due to Covid-19, the Gettysburg store closed, but the other three (3) American Shaman stores continued operations.  Following Covid-19 lockdowns, RJR opened a store in the Tanger outlets in Lancaster, PA.

15.     Plaintiff Natural Healing and Wellness of Cranberry LLC ("Natural") is a business entity registered under the laws of Pennsylvania. Natural was established in 2022 in Cranberry, PA. Natural was selling Delta-8 THC and Delta-10 THC products since its inception in all of its Pennsylvania stores.

16.     Defendant Heather Adams ("Adams") is District Attorney of Lancaster County, Pennsylvania. At all times relevant to this complaint, Adams was acting under color of state law. Adams is a policymaker for Lancaster County for purposes of county liability under 42 U.S.C. § 1983.

17.     Defendant Lancaster County is a subdivision of the Commonwealth of Pennsylvania. The county and its officials are responsible for creating, adopting, and enforcing the rules, regulations, ordinances, laws, policies, practices, procedures, and/or customs for the County.

18.     Defendant Jeffrey R. Krause is a Lieutenant with the Lancaster County Drug Task Force ("LCDTF"), acting under color of law.

19.     Defendant John Doe No. 1 is an officer with the LCDTF, acting under color of law. Defendant John Doe No. 2 is an officer with the LCDTF, acting under color of law. Defendant John Doe No. 3 is an officer with the LCDTF, acting under color of law. All John Doe Defendants are collectively referred to as "Doe's".

## Statement of Facts

20.     Plaintiffs established a long history of legally selling hemp derived products openly to the public in Pennsylvania.

21.     The products at issue in this case contained various chemical compounds derived from hemp; namely, products containing Delta-8 tetrahydrocannabinol ("Delta-8 THC"), Delta-9 tetrahydrocannabinol ("Delta-9 THC"), Delta-10 tetrahydrocannabinol ("Delta-10 THC"), and Delta-11 tetrahydrocannabinol ("Delta-11 THC") (collectively. "Delta Products"). These substances are some of the over 100 cannabinoids produced naturally by the cannabis plant, generally in very small quantities, that can now legally be synthesized from industrial hemp and include it in various products, as discussed further below.

22.     The market for such hemp derived Delta Products emerged following relevant amendments to both Pennsylvania and federal law. 2016 Pa. Legis. Serv. Act 2016-92 (H.B. 967), P.L. 822, 3 Pa. C.S.A. § 701 *et seq*. (amending Pennsylvania's Agricultural Code with a chapter concerning industrial hemp research); 2018 Agricultural Improvement Act, Pub. L. No. 115-334,

132 Stat. 4490, 21 U.S.C. §§ 802(16)(B), 812 sched. I(c)(17) (removing hemp and hemp derived products from the federal schedule of controlled substances).

23.     Delta-9 THC is the main psychoactive ingredient in marijuana. To distinguish marijuana from other, legal, hemp derived products – all of which derive from the same plant (Cannabis sativa L.), the statutory definitions are pegged to the concentration of Delta-9 THC. 7U.S.C. § 1639o(1) ("The term 'hemp' means the plant Cannabis sativa L. and any part of the plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3% on a dry weight basis."); 3 Pa. C.S.A. § 702 (defining "Industrial hemp" as "[t]he plant Cannabis sativa L. in any part of the plant, whether growing or not, with a D9 Tetra hydro cannabinol concentration of not more than 0.3% on a dry weight basis.").

24.     Thus, for years Plaintiffs have carried several different hemp-derived products containing Delta-8 THC, Delta-10 THC, Delta-11 THC, and Delta-9 THC (with a concentration of not more than 0.3% of Delta-9 THC), in all stores across all jurisdictions, including in Lancaster County.

25.     All such products carried by Plaintiffs are derived from hemp and contained less than 0.3% Delta-9 THC.

26.     All the hemp-derived products that Plaintiffs have carried are sourced from reputable manufacturers who provide testing documentation reflecting that the products at issue contain no more than 0.3% Delta-9 THC.

27.     These products have been sold for years from Plaintiffs' shelves, just as all of Plaintiffs' other products, in stores open to the public. The advertising and sale of these products to the public is protected speech under both federal and state law. These products are extremely

popular and generate monthly revenues in the 10's of thousands of dollars from each storefront location.

28.     Plaintiffs' customers, who buy these hemp-derived products, run the gamut in age, from 18 years to elderly individuals, with many customers around 50-60 years old who find the products useful for various ailments and pain relief. The products these customers purchased regularly were among those illegally seized by Defendants, as described further below.

**Lancaster County DA Adams Orchestrates a Sudden, Warrantless Raid and Seizure from Vitality's Lancaster Store on April 18, 2023**

29.     Upon information and belief, DA Adams directed the LCDTF to raid approximately twenty-five (25) local stores in Lancaster, PA without court involvement and without a warrant based solely on her opinion.

30.     On April 18, 2023 at approximately 1:00 PM EST, four (4) law enforcement agents representing the LCDTF entered Vitality's American Shaman store in Lancaster with guns on their hips.

31.     The LCDTF served a "memo" regarding the alleged legal status of THC isomers and demanded seizure of all products and merchandise they deemed illegal as directed by Adams. A true and correct copy of the "memo" is attached hereto as **Exhibit "A"**.

32.     Krause and Doe's, representing the LCDTF, explained to the manager on duty at the store that this raid was part of a county-wide seizure of products containing Delta-8 THC and Delta-10 THC.

33.     Krause and Doe's exercised their intimidation and influence to deter the manager from demanding a warrant for search and seizure of the store's products. For example, Krause and Doe's said that if the store did not comply with the voluntary search and seizure, then Krause and Doe's would conduct a full-scale search with heavier police presence and enforcement activity.

34.     Faced with this decision, the store manager told Krause and Doe's to contact the store owner, but the store owner was not able to be immediately reached despite efforts by both the store manager and Krause and Doe's. Yet, Krause and Doe's would not leave until they had an answer whether the store would comply with a voluntary search and seizure.

35.     While Krause and Doe's remained loitering in the store awaiting a response, patrons continually approached the store entrance but turned around to leave, thereby driving away business and perpetuating a chilling effect towards the legal advertising, sale, and purchase of hemp-derived products in Lancaster County and across Pennsylvania.

36.     In fact, when confronted with the legality of what Krause and Doe's were attempting to do – perform a warrantless search and seizure through intimidation – they could not enumerate the illegality arising from the sale of these hemp-derived products.

37.     Krause and Doe's informed Vitality that if it continued to sell Delta-8 THC and Delta-10 THC products, then  it would face store shutdown and search, severe fines, misdemeanor and/or felony charges – solidifying the chilling effect on the advertising and sale of legal hemp-based products in Lancaster County and across Pennsylvania.

38.     In fact, Krause and Doe's inferred that other hemp-based product stores complied with the voluntary seizure, so if Vitality did not also agree, it would be earmarked by the LCDTF as a target – their intent was to intimidate and use scare tactics to force compliance.

39.     Faced with the prospect of further loss of business and despite serious legal concerns, when Vitality's store owner was reached by phone, he agreed to the voluntary search and seizure rather than the warrant being issued and exercised.

40.     Krause and Doe's began to inspect all visible shelf space and seize products marked as Delta-8 THC and Delta-10 THC, culminating in a receipt of inventory seized identified as Police

Incident Number TF-0098 23 II. A true and correct copy of the Police Incident Number TF-0098-23 II is attached hereto as **Exhibit "B"**.

41.     Vitality has lost thousands of dollars in profits since the raid, due to its inability to sell any Delta-8 THC, Delta-10 THC (as well as Delta-11 THC  and Delta-9 THC) products at the store in Lancaster County, which had previously accounted for significant sales each month.

42.     Vitality continues to sell Delta-8 THC, Delta-10 THC (as well as Delta-11 THC and Delta-9 THC products) at its stores in other Pennsylvania counties, without any interference from law enforcement, but with a tempered inventory and always with the looming threat of state law enforcement that could adopt the Defendants misguided opinions on these legal products.

43.     When Vitality was raided by Defendants, Vitality called one of the RJR owners who spoke with the Officer leading the armed raid. The RJR owner asked the Officer if he had a warrant to perform the search and seizure. The Officer reported that he did not have a warrant and was acting under the plain view doctrine. Yet, the products seized are legal and could not be gleaned as being illegal from a plain view.

44.     Plaintiffs RJR and Natural did not have product seized, however, these stores pulled Delta-8 THC and Delta-10 THC products from the shelves because the memo threatened arrest and imprisonment – and caused a chilling effect throughout the Pennsylvania hemp industry, particularly in Lancaster County.

45.     Natural lost opportunities to expand its store locations due to the acts of Defendants because of uncertainly on sporadic and confusing Pennsylvania law enforcement, culminating in a chilling effect to open additional hemp-based product stores.

46.     More particularly, Natural has overall decreasing products available as it is phasing out Delta-8 THC and Delta-10 THC sales due to Defendants actions.

47.     These raids made significant local headlines, appeared in all the written media in Lancaster, PA, and was featured on the nightly TV news.

**Relevant Law**

48.     In 2016, the Pennsylvania Legislature amended the Agriculture Code by adopting a chapter on "industrial hemp research." Act 2016-92, codified at 3 Pa.C.S. §§ 701 et seq. The statute provides the Department of Agriculture of the Commonwealth of Pennsylvania the "powers and duties," "notwithstanding any other law to the contrary, to regulate and permit industrial hemp under this chapter in a manner consistent with the provisions of this chapter and all Federal laws, regulations, and orders. 3 Pa.C.S. § 703(b)(1). This includes the power "[t]o establish, implement and administer an agricultural pilot program," that is, "a pilot program to study the growth, cultivation or marketing of industrial hemp."  Id. §§ 702, 703(b)(2) (emphasis added).

49.     "Industrial hemp" is defined in the chapter to mean "[t]he plant Cannabis sativa L. and any part of the plant, whether growing or not, with a Delta-9 tetrahydrocannabinol concentration of not more than 0.3% on a dry-weight basis." Id. § 702.

50.     The industrial hemp research statute provides that the Pennsylvania Department of Agriculture "shall have the following powers and duties:"

(1)     Notwithstanding any other law to the contrary, *to regulate and permit industrial hemp* under this chapter in a manner consistent with the provisions of this chapter and all Federal laws, regulations and orders.

(2)     To establish, implement and administer an agricultural pilot program to the extent funds are available.

(3)     To develop and implement permitting requirements, and regulations *if necessary*, to carry out the provisions of this chapter.

(4)     To issue, renew, deny, revoke, suspend or refuse to renew permits to conduct an *agricultural pilot program*.

(5)     To develop an application for registration.

(6)     To develop an application for permits.

(7)     To create and maintain a database of permitted institutions of higher education and sites *used to grow or cultivate* industrial hemp.

…

(9) To establish, through permit, restrictions for the use or reuse of seeds, crops or *products produced as the end result of an agricultural pilot program.*

…

3 Pa.C.S. § 703(b) (emphasis added).

51.     As reflected above – using specific powers and duties with specific language, the "industrial hemp" program vested authority in the Department to include the authority to regulate the "marketing" of "products" produced as a result of an "agricultural pilot program."

52.     As for "growth and cultivation" of industrial hemp (notably distinct from the "marketing" of "products"), the statute limited this to "the [Pennsylvania Department of Agriculture] or an institution of higher education for the purposes of research conducted under an agricultural pilot program." 704(a).

53.     Critically, Section 706 of the industrial hemp statute provides that "[a]n activity conducted in compliance with this chapter shall not be in violation of the laws of the Commonwealth including" the Pennsylvania Controlled Substance, Drug, Device and Cosmetic Act (the act of April 14, 1072, P.L. 233, No. 64) (hereinafter the Pennsylvania CSA or Pennsylvania Controlled Substances Act) (emphasis added).

54.     In 2018—just two years after enactment of Pennsylvania's "industrial hemp" statutes—the federal Farm Bill was enacted, which removed "hemp" from the federal schedule of controlled substances. See 21 U.S.C. §§ 802(16)(B), 812 sched. I(c)(17), thereby pre-empting state law.

55.     Under Federal law, "[t]he term 'hemp' means the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 1639o(1).

56.     The Pennsylvania Department of Agriculture has explained on its website:

Through the 2018 Farm Bill, the federal government has changed the legal status of hemp. It has been removed from regulation under the federal Controlled Substance Act, ending any restrictions on import or interstate movement of hemp seed, plants, or products. However, the 2018 Farm Bill still requires that every site where hemp is grown be registered with the state or federal government under a program with requirements for inspection and testing. The PA Hemp General Permit explains the permitting process and requirements for hemp permitting in Pennsylvania. It can be found on the PDA hemp program webpage: http://agriculture.pa.gov/hemp.

Pennsylvania Department of Agriculture,
*https://www.agriculture.pa.gov/Plants_Land_Water/hemp/Pages/Hemp-Program- FAQs.aspx*
(emphasis added) (last visited October 9, 2023).

57.     The 2018 Farm Bill pre-empted and allowed hemp to be grown commercially outside of the limitations of the 2016 Pennsylvania "Industrial Hemp" program. Accordingly, the Pennsylvania Department of Agriculture observes on its public website that "the 2018 Farm Bill allowed hemp to be grown commercially and outside of a research pilot program." Pennsylvania Dep't of Agriculture, Resources & Regulations, https://www.agriculture.pa.gov/Plants_Land_Water/hemp/Pages/Resources.aspx (last visited October 9, 2023).

58.     The Pennsylvania Department of Agriculture also has authority in this area under the Controlled Plants and Noxious Weeds Law, Act of Oct. 30, 2017, P.L. 774, No. 46, which added Chapter 15 to the Pennsylvania Agriculture Code, 3 Pa.C.S. 1501 et seq. (the Controlled Plants Act). The Controlled Plants Act authorizes the Department of Agriculture, through the Controlled Plant and Noxious Weed Committee (Committee), to establish a controlled plant list and to add plants to or remove plants from the controlled plant list (3 Pa.C.S.A. § 1511(b)(3)(ii)(iii)).

59.     The Controlled Plants Act authorizes the Pennsylvania Department of Agriculture to issue General Permits, on a statewide or regional basis, for the research, marketing, retail, wholesale, transport, storage, warehousing, display, distribution, cultivation or propagation of controlled plants. 3 Pa.C.S. § 1513.

60.     The Committee added hemp to the Controlled Plant List and published such Notice in the Pennsylvania Bulletin on April 6, 2019. 49 Pa.B. 1667, Saturday Apr. 6, 2019.

61.     This decision to add hemp to the Controlled Plant List, enabling regulation under the Controlled Plants Act, was taken in light of, and in response to, the federal de-scheduling of "hemp" in the 2018 Farm Bill. *See* Pa. Dep't of Agriculture, Notice, General Permit Standards and Requirements for Hemp, 53 Pa.B. 837 (p. 1-2, recitals H, I, and J).[1]

62.     Regulating under the authority of the Controlled Plants Act, the Department established a General Permit for hemp, "to establish requirements under which persons may apply to plant, grow, propagate or cultivate hemp in the Commonwealth for the purpose of research or commercial production."

---

[1] This is the most recent version of such Notice. But the General Permit program for hemp remains materially the same as it was established initially. *See* prior versions of the Notice at 50 Pa.B. 6906, Saturday, Dec. 5, 2020; 51 Pa.B. 1831, Saturday, Apr. 3, 2021.

63.     While the authority vested in the Pennsylvania Department of Agriculture under both the Industrial Hemp Act and the Controlled Plants Act extends to marketing and retail activities, the Department does not require any applications or permits to market or retail hemp-derived products since these hemp-derived products are legal under federal law. The Department's website prominently confirms that "[t]here is not a state level permit/license requirement in Pennsylvania specifically for wholesaling, retailing or brokering hemp and hemp products." Pennsylvania Dep't of Agriculture, Hemp Program Frequently Asked Questions.[2]

64.     The Pennsylvania Department of Agriculture also states on its home page for the hemp program that "[t]he department is committed to continuing to foster the growth of hemp as a profitable, sustainable and in-demand product."[3]

65.     The Pennsylvania Hemp Steering Committee's website is hosted by the Commonwealth of Pennsylvania, and promotes the various end-uses of hemp, including through the following graphic available at its home page:



[2] https://www.agriculture.pa.gov/Plants_Land_Water/hemp/Pages/Hemp-Program-FAQs.aspx#
[3] https://www.agriculture.pa.gov/Plants_Land_Water/hemp/Pages/default.aspx

Pa. Hemp Steering Committee, *https://www.pa-hemp-steering-committee.org*. (last visited Aug. 1, 2023).

66.     The Hemp Steering Committee also publicly touts "cannabinoids" as particularly "valuable" chemicals derived from hemp flowers, explaining that "Cannabidiol" is one of "the most abundant cannabinoids in hemp" and has "been studied for [its] potential beneficial properties," followed by a graphic depicting various finished products, including, among many others, "Pharmaceuticals," "Consumables," "Medicine," "Sacrament," "Supplements," and "Vitamins."



Pa. Hemp Steering Committee, *https://www.pa-hemp-steering-committee.org/hemp-101* (last visited Aug. 1, 2023).

**Damages**

67.     Defendants' unlawful, intentional, willful, deliberately indifferent, reckless, and/or bad-faith acts and omissions caused the illegal seizure and effective destruction of tens of thousands of dollars' worth of Vitality's inventory, and has prevented Vitality from selling hemp-derived products with Delta-8, Delta-10, and Delta-11 from its Lancaster store since April 18, 2023, resulting in significant loss of revenue and business goodwill to present and which losses will continue into the future until relief is secured from this court.

68.     Defendants' unlawful, intentional, willful, deliberately indifferent, reckless, and/or bad-faith acts and omissions caused a chilling effect in the Pennsylvania hemp industry, particularly in Lancaster County, and has inhibited all Plaintiffs from selling hemp-derived products with Delta-8 THC and Delta-10 THC (as well as Delta-11 THC and Delta-9 THC under 0.3% on dry weight basis) from its stores without fear of state prosecution since April 18, 2023, resulting in significant loss of revenue and business goodwill to present and which losses will continue into the future until relief is secured from this court.

69.     These injuries and damages to Plaintiffs were foreseeable to Defendants at the time of their acts and omissions.

70.     All of the acts and omissions committed by Defendants were done intentionally, unlawfully, maliciously, wantonly, recklessly, negligently, and/or with bad faith, and said acts meet all the standards for imposition of punitive damages.

**COUNT 1**

**42U.S.C. § 1983: Illegal Search and Seizure in Violation of the Fourth Amendment**

71.     Plaintiff hereby incorporates by reference all of the preceding paragraphs.

72.     Under color of state law, Defendants illegally searched Vitality's store on or about April 18, 2023 without any warrant and without effective consent, in violation of Vitality's rights under the Fourth Amendment to the United States Constitution.

73.     Under color of state law, Defendants illegally seized tens of thousands of dollars' worth of Vitality's inventory on or about April 18, 2023 without any warrant and without effective consent, in violation of Vitality's rights under the Fourth Amendment to the United States Constitution.

74.     Vitality has sustained significant monetary damages as a direct and proximate result of the injuries set forth above.

## COUNT 2

### 42 U.S.C. § 1983: *Monell* Claim Against Defendant Lancaster County

75.     Plaintiffs hereby incorporates by reference all of the preceding paragraphs.

76.     Defendant County of Lancaster, by and through its final policymaker District Attorney Heather Adams, was at all times relevant to this Complaint responsible for the policies, practices, and customs of the Lancaster County District Attorney's Office.

77.     Defendant Lancaster County had and has a policy, practice, or custom of unconstitutional enforcement under the Pennsylvania Controlled Substance Act against hemp-derived products that may legally be possessed and sold in Pennsylvania. This unconstitutional policy, practice, or custom includes the direction, encouragement, and condoning of illegal warrantless searches and seizures of businesses in Lancaster County by law enforcement without effective consent and illegal seizure of hemp-derived products.

78.     Defendant Lancaster County, by and through its final policymaker, Defendant Adams, decided to undertake the intimidation and illegal search and seizure of Vitality at its

Lancaster storefront on or about April 18, 2023, and continues to implement this illegal intimidation through stated threats of prosecution if Vitality were to resume selling products that Vitality has every legal right to sell.

79.     Defendant Lancaster County, by and through its final policymaker, Defendant Adams, in deciding to undertake the intimidation and illegal search and seizure of Vitality at its Lancaster storefront on or about April 18, 2023, continues to implement this illegal intimidation, and has caused a chilling effect in the Pennsylvania hemp industry that is prohibiting the sale of legal hemp-derived products by all Plaintiffs without fear of state prosecution.

## COUNT 3

### 42 U.S.C. §1983: Illegal Retaliation in Violation of the First Amendment

80.     Plaintiffs hereby incorporates by reference all of the preceding paragraphs.

81.     All Plaintiffs are in the business of selling, advertising for sale, promoting in writing on the internet, as well as advertising inside and outside the hemp-based product stores in Lancaster County and across the Commonwealth of Pennsylvania.

82.     All Plaintiffs engaged in constitutionally protected activity of offering their hemp-based products for sale to consumers.

83.     Under color of state law, Defendants illegally sent a "memo" to a number of legal hemp-based product stores across Lancaster County, and specifically to Plaintiff Vitality. This action was telecast and shared with the public through wide media coverage of the illegal search/seizure of hemp-based products at various stores, and chilling the Pennsylvania hemp-based products market.

84.     The illegal search and seizure of Vitality's store, along with other hemp-based product stores in Lancaster County, caused a chilling effect on all of Plaintiffs' business of legally selling hemp-based products.

85.     Further, the illegal search and seizure of Vitality's store, along with other hemp-based product stores in Lancaster County adversely impacted all Plaintiffs' businesses to sell legal hemp-based products and any expansion of such business inside and outside the Commonwealth of Pennsylvania due to the threat of state prosecution, fines, and potential incarceration – as well as seizure of inventory and associated monetary losses.

86.     In fact, any reasonable person selling these hemp-based products are similarly subject to this chilling effect and adversely impacted, which were caused solely by Defendants actions as alleged.

## COUNT 4

### Declaratory Judgment

87.     Plaintiffs hereby incorporate by reference all of the preceding paragraphs.

88.     All of the Plaintiffs' products, including Vitality's products that were seized by Defendants, are legal to possess, advertise, and retail in Pennsylvania.

89.     Pennsylvania's Industrial Hemp law and Controlled Plants Act and associated regulations, as well as the statements and permitting policies of the Pennsylvania Department of Agriculture, expressly and impliedly limit the scope of Pennsylvania's Controlled Substance Act with regard to hemp-derived products.

90.     The Industrial Hemp Law expressly vests the Pennsylvania Department of Agriculture with authority to regulate not just the growing, cultivating, and processing of "industrial hemp," but also the marketing and retail of finished hemp-derived products. 3 Pa.C.S.

§ 703(b) (vesting the Department with express authority to "regulate and permit industrial hemp under this chapter in a manner consistent with the provisions of this chapter and all Federal laws, regulations and orders," "notwithstanding any other law to the contrary"); id. § 702 (defining "Agricultural pilot program" to mean "[a] pilot program to study the growth, cultivation or marketing of industrial hemp").

91.     More specifically, the Industrial Hemp Law vests the Department with the "power and dut[y]" to "establish, *through permit*, restrictions for the use or reuse of seeds, crops or *products produced as the end result of an agricultural pilot program*." Id. § 703(b)(9) (emphasis added).

92.     The statute further explains that the Department has the "power and dut[y]" "[t]o develop and implement permitting requirements, and regulations if necessary, to carry out the provisions of this chapter." 3 Pa.C.S. § 703(b)(3).

93.     The Pennsylvania Department of Agriculture is therefore expressly vested with authority and the "dut[y]" to implement permitting requirements for all phases of the growth, cultivation, processing, and retail marketing of industrial hemp and its end products. Further, in light of the 2018 Farm Bill, the Department has expressly recognized that hemp products to be so regulated are not limited to products grown by the Department itself or by educational institutions. Instead, the Department affirmatively observes on its public website that "the 2018 Farm Bill allowed hemp to be grown commercially and outside of a research pilot program" – thereby acknowledging the pre-emptive nature of the 2018 Farm Bill to any conflicting Pennsylvania statutes.

94.     Additionally, upon the designation of hemp as a controlled plant, Pennsylvania's Controlled Plants Act expressly gave the Department of Agriculture the authority to establish and

administer permitting requirements not just for growing, cultivating, and processing of hemp, but *also its marketing and retail*. 3 Pa.C.S. § 1513 ("General permits may be issued for the research, marketing, retail, wholesale, transport, storage, warehousing, display, distribution, cultivation or propagation of controlled plants[.]").

95.     The Pennsylvania Department of Agriculture observes that Delta-9 THC is "the intoxicating component of cannabis." 2023 Hemp General Permit Notice at 4 (defining "Decarboxylation").[4] Accordingly, all relevant definitions distinguish legal hemp from marijuana by reference to the concentration of delta-9 THC.  3 Pa. C.S.A. § 702 (defining "Industrial hemp" as "[t]he plant Cannabis sativa L. and any part of the plant, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3% on a dry-weight basis."); 2023 Hemp General Permit Notice (defining "Hemp" as "[t]he plant Cannabis sativa L. and any viable part of that plant, with a delta-9 tetrahydrocannabinol (THC) concentration of not more than 0.3 percent on a dry weight basis.").

96.     The Pennsylvania Department of Agriculture, following the 2018 amendments to the Federal Controlled Substances Act de-scheduling hemp, has expressly recognized that hemp and hemp-derived products may be legally possessed, transported, and sold in Pennsylvania, so long as they contain less than 0.3% delta-9 THC.

97.     The Pennsylvania Department of Agriculture, which has authority to regulate retail of hemp-derived products, both expressly promotes the many end uses of hemp-derived products, and expressly states that no statewide permit or license is required to market such products.

---

[4] *See also id*. (defining "Delta-9 tetrahydrocannabinol" thus: "Also referred to as ''Delta-9 THC'' or ''THC'' is the primary psychoactive component of cannabis. For the purposes of this General Permit, delta-9 THC and THC are interchangeable.").

98.     As demonstrated above, the Pennsylvania Department of Agriculture is the agency vested not just with express authority, but the "duty," to regulate retail of hemp-derived products through permitting requirements, and the Department has decided that no permit is required to legally market hemp-derived products with no more than 0.3% delta-9 THC in Pennsylvania. Such activity is in compliance with state policy and is not a violation of the Pennsylvania Controlled Substance Act. *See* 3 Pa.C.S. § 706.

99.     The Pennsylvania Department of Agriculture even promotes "Consumables," "Supplements," "Vitamins," "Shampoo," "Bath Gels," "Lotions," and other finished products derived from the "valuable" "cannabinoid" chemicals derived from hemp.

100.    Defendant District Attorney Adams acknowledges that the Industrial Hemp Law and Controlled Plants Act statutes limit the scope of the Pennsylvania Controlled Substances Act. The "memo" that Defendant task force members presented to Vitality employees on April 18, 2023 reflects this fact, because in the memorandum, Defendant Adams acknowledges that "any product with a delta-9 concentration greater than .3% is also a schedule I controlled substance." *See* **Exhibit A** (emphasis added). The Delta-9 concentration marker is found in the Industrial Hemp and Controlled Plant statutes, not in the Pennsylvania Controlled Substance Act. Defendant Adams' reference to this marker, then, is a recognition that the definition of "industrial hemp" and "hemp" in these two statutes applies to distinguish legal hemp and hemp products from other substances derived from the plant Cannabis sativa L. that remain controlled under the Pennsylvania Controlled Substances Act.

101.    While Defendant Adams is correct in recognizing that the definitions in the Industrial Hemp and Controlled Plant laws limit the scope of the Controlled Substance Act, she

errs as a matter of law in reading the definition to mean that hemp-derived products with no Delta-9 THC (such as those seized from Vitality) are illegal.

102.    Defendant Adams' "MEMO" claims that "under Act 64 … THC isomers including Delta-8 THC and Delta-10 THC are schedule I controlled substances." Her position is apparently that, because the statutory definitions distinguish "industrial hemp" and "hemp" with respect to a certain concentration of Delta-9 THC, the only products legalized as a result of these laws are those hemp-derived products (1) with Delta-9 THC (2) but under the designated concentration, and any products reflecting any trace of any other THC isomers (Delta-8 THC, Delta-10 THC, etc.) are illegal, even if they have zero Delta-9 THC.

103.    Defendant Adams' understanding of the statutory definition(s) contravenes the clear text of those statutes. A product with zero Delta-9 THC has no more than 0.3% THC, and thus is regulated as a legal hemp-derived product rather than a controlled substance.

104.    Defendant Adams' understanding also contradicts the publicly declared position of the state agency with authority over regulating and permitting hemp-derived products.

105.    Defendants confiscated thousands of dollars' worth of inventory from Vitality's Lancaster storefront without any evidence that such products contained any Delta-9 THC, thereby chilling the protected speech of legal retailers in Pennsylvania.

106.    All Plaintiffs request a declaratory judgment that, in light of the Industrial Hemp Law and Controlled Plants Law and the regulations and policies of the Department of Agriculture thereunder, hemp-derived products with no more than 0.3% Delta-9 THC, including products without any Delta-9 THC, are not subject to enforcement as scheduled substances under the Pennsylvania Controlled Substance Act.

## PRAYER FOR RELIEF

Plaintiff prays for the following relief:

1.      An award of compensatory damages for the violation(s) of Plaintiffs constitutional rights;

2.      An award of punitive damages for the violation(s) of Plaintiff's constitutional rights;

3.      A declaratory judgment that products derived from Cannabis sativa L. that contain no more than 0.3% delta-9 THC, including products without any delta-9 THC, are not subject to enforcement under the Pennsylvania Controlled Substance Act;

4.      Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 or any other applicable statute or authority; and,

5.      Any other relief that the Court deems just and appropriate.


                                                                Respectfully Submitted,


        _____s/ Justin S. Moriconi_____              _____s/ Theodore C. Flowers_____
        Justin S. Moriconi, Esquire                  Theodore C. Flowers, Esquire
        PA ID No. 204458                             PA ID No. 82218
        Moriconi Flowers Ltd.                        Moriconi Flowers Ltd.
        40 West Evergreen Avenue                     40 West Evergreen Avenue
        Suite 104                                    Suite 104
        Philadelphia, PA 19118                       Philadelphia, PA 19118
        215-277-1410                                 215-277-1410
        Justin@MoriconiFlowers.com                   Ted@MoriconiFlowers.com
        Attorney for Plaintiff                       Attorney for Plaintiff

Exhibit "A"

Office of The

# DISTRICT ATTORNEY OF LANCASTER COUNTY

Telephone
717-299-8100
Fax
717-295-3693

Lancaster County Courthouse
50 North Duke Street
Post Office Box 83480
Lancaster, PA  17608-3480



Heather L. Adams
District Attorney

# MEMO

To:     Store Owner/Store Manager

From:   Heather L. Adams
        District Attorney Lancaster County

Date:   April 17, 2023

RE:     Illegal Products Containing Delta-8, Delta-10 and Delta-9 with THC content >.3%

This Memo is to inform you that under Act 64 of Pennsylvania law, otherwise known as the Controlled Substance, Drug, Device and Cosmetic Act, THC isomers including delta-8 THC and delta-10 THC are schedule I controlled substances. Title 35 P.S. §780-101 et. seq. Additionally, any product with a delta-9 concentration greater than .3% is also a schedule I controlled substance.

Pursuant to my directive, Detectives with the Lancaster County Drug Task Force will be seizing all products in plain view labeled or advertised as containing Delta-8 THC or Delta-10 THC.  No charges will be filed if you cooperate fully with the Lancaster County Drug Task Force. Cooperation includes the immediate surrender to law enforcement of any such illegal products from the establishment, on or off site, and ceasing any future sales of such products.

Should the sale of any of these illegal products resume, you will face a charge of possession of a controlled substance – a misdemeanor offense punishable by up to one year in prison and/or a fine of up to $5,000 fine, or possession with intent to distribute a controlled substance, a felony punishable as a first offense by up to five years in prison and a $15,000 fine.  A subsequent offense includes increased penalties.

Exhibit "B"

A COPY OF THIS FORM, WHEN COMPLETED, IS TO BE ATTACHED TO EACH COPY OF THE SEARCH WARRANTS/AFFIDAVIT

**Commonwealth of Pennsylvania**                     **RECEIPT / INVENTORY**
                                                     OF SEIZED PROPERTY

**COUNTY OF**

| Docket Number (Issuing Authority): | Police Incident Number: TF 00-15-23 II | Warrant Control Number: TF 0098-23 II |
|---|---|---|
| Date of Search: 4-18-23 | Time of Search: 1345 | Inventory Page Number: 1 of 1 Pages |

| Affiant | Agency or Address if private affiant | Badge No. |

The following property was taken / seized and a copy of this Receipt / Inventory with a copy of the Search Warrant and affidavit(s) (if not sealed) was

☐ personally served on (name of person) _____
☑ was left at (describe the location) _HMELLIN THAWMAN_

| Item Number | Quantity | Item Description | Make, Model, Serial No., Color, etc. |
|---|---|---|---|
| 1 | 10 | Sour Belt Gummies Packs Delta 8 / Delta 10 | |
| 2 | 5 | Berry Cool Δ8 Gummy Packs | |
| 3 | 13 | Hometown Hero Δ8 Gummy Pack | |
| 4 | 4 | URB Δ8 Δ10 Gummy Packs | |
| 5 | 7 | Zen Master Δ8 Flower | |
| 6 | 3 | Δ8 Top Shelf Pre Rolls | |
| 7 | 28 | URB Δ8 Vape Carts | |
| 8 | 4 | Δ8 Nano Gummy Zen Master | |
| 9 | 2 | Δ8 Gummies URB | |
| 10 | 2 | Large Mason Jars w/ Δ8 Flower Top Shelf | |

I/we do hereby state that this inventory is to the best of my/our knowledge and belief a true and correct listing of all items seized, and that I/we sign this Receipt / Inventory subject to the penalties and provisions of Title 18 Pa.C.S. 4904(b)--Unsworn Falsification to Authorities.

| Signature of person issuing Receipt / Inventory | Printed Name: Mc Fay | Affiliation: L/DTF | Badge or Title: DET |
|---|---|---|---|
| Signature of Witness | Printed Name: JEFFREY R. KRAUSE | Affiliation: LODTF | Badge or Title: 16 |
| Signature of person making Search | Printed Name: McFay | Affiliation: L/DTF | Badge or Title: DET |

DAO-0001

AOPC 413B-98